Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 5037 | DATE | 10/12/2001 |
| CASE TITLE | ST. PAUL REINSURANCE, et al. vs. WILLIAMS, et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiffs' Motion for Summary Judgment [4-1] is **GRANTED**. All pending motions or dates are terminated as moot.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | 10-17-01 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | 01 OCT 16 PM 6:18 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ST. PAUL REINSURANCE COMPANY )
and CNA REINSURANCE COMPANY )
   Plaintiffs, ) CASE NO. 00 C 5037
)
v. )
) JUDGE WILLIAM J. HIBBLER
WILLIAMS & MONTGOMERY, LTD., )
LLOYD WILLIAMS and )
CHARLES BARRY MONTGOMERY )
   Defendants. )

## MEMORANDUM AND ORDER

The Court has before it Plaintiffs' Motion for Summary Judgment (doc. #4). The matter has been fully briefed and thus is ready for adjudication. For the reasons stated below, the Court GRANTS Plaintiffs' Motion for Summary Judgment.

### BACKGROUND

St. Paul Reinsurance Company and CNA Reinsurance Company ("Plaintiffs"), issued two professional liability insurance policies to the law firm of Williams and Montgomery, Ltd. ("Defendant"). The policies were of claims-made policies and were to run from May 3, 1998 to May 3, 1999 ("the 1998-1999 Policy") and May 3, 1999 to May 3, 2000 ("the 1999-2000 Policy").

On March 28, 1999, Defendant fired four of its non-equity partners and one 1 equity partner.[1] On April 1, 1999, the non-equity partners sent a letter to Defendant and expressed their belief they were owed money and requested that the firm "preserve all evidence related to this dispute."

---

[1] The details of the alleged reasons for the terminations are irrelevant to the present motion, except that one of the reasons concerned financial compensation.

1



(Compl. at Ex. D.) Defendant admits it did receive this letter prior to May 3, 1999, the date the 1998-1999 Policy was to expire and the 1999-2000 Policy was to begin. Defendant did not notify Plaintiff it had received this letter.

On April 7, 1999, the *Chicago Daily Law Bulletin* published an article about the firings. (Compl. at Ex. F.) The article quoted one of the four non-equity partners as saying the firm had promised them bonuses and they believed they were owed compensation. The equity partner also stated that in order to avoid paying the annual compensation due to her under her written partnership agreement, the firm was claiming she had not been terminated. Defendant's managing partner was interviewed for the article, but declined to comment specifically on any compensation issues. Defendant did not notify Plaintiff there was a change in circumstances at their firm that might result in a liability "claim" as defined by the 1998-1999 Policy.[2]

Sixteen days later, on April 23, 1999, Defendant signed and submitted the application for their second claims-made policy, i.e. the 1999-2000 policy. The terms of the policies with Plaintiffs required Defendant to disclose the existence of any claim or change in circumstances before renewal could occur. Both the 1998-1999 and the 1999-2000 Policies were written using an Employment Practices Insurance Claims Made Basis EPL form. A section in the application titled "Loss History" specifically asked: "Since the signatory date on last year's application form, has there been any change in the status of any EPL

---

[2] The 1998-1999 Policy defines claims in relevant part as "notice received by the Insured or written demand received by the Insured in which damages are alleged."

2

claims or circumstances either uninsured or insured other than those reported to us? If yes, please provide details on a separate sheet." Defendant responded, "No" and its managing partner signed the application. The application was subsequently received by Plaintiff, who in reliance on that representation, authorized the 1999-2000 Policy to begin on May 3, 1999.

On April 29, 1999, the terminated equity partner sent a letter to Defendant demanding an accounting and payment of amounts owed to her. Defendant admits it did receive this letter prior to May 3, 1999, the date the 1998-1999 Policy was to expire and the 1999-2000 Policy was to take effect. Once again, Defendant failed to report to Plaintiff someone had made a demand for money.

In June 1999, the five partners filed two lawsuits against Defendant. Defendant filed an appearance for both of those lawsuits in July 1999. Defendant did not report either of these lawsuits to Plaintiffs until October 15, 1999. Both the 1998-99 Policy and the 1999-2000 Policy stated coverage for the insured is limited and provided only when the insured event does not "arise from a Circumstance of which any Insured has knowledge prior to the inception date of this policy," (Compl. at Ex. A.), and is reported to the Insurer within thirty days of notification that a claim exists. Notification did not take place until almost two and half months after the partners filed their lawsuits against Defendant.

Plaintiffs allege Defendant breached the notice/claim reporting provisions that are a condition precedent to coverage under both policies, and that they are entitled to rescind the 1999-2000 Policy

3

because the Defendant made a material representation in the application for insurance that affected the risk assumed by the Insurers under that policy.

**Standard of Review**

A motion for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (C). In deciding whether summary judgment is appropriate, the court must view all evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986); *Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir. 1986), *cert. denied*, 107 S.Ct. 1304 (1987). A genuine issue of material fact exists when the evidence presented is such that a reasonable jury could find for the non-moving party. *Id.* at 250-51. The moving party bears the burden of establishing the absence of any disputed facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

**Analysis**

Conditions Precedent to Coverage

Under Illinois law, the interpretation of an insurance policy is a question of law. *See Employers Ins. Of Wausau v. Bodi-Wachs Aviation Ins. Agency, Inc.*, 39 F.3d 138, 141 (7th Cir. 1994). Since both parties assume Illinois law applies to the policies, and it is the forum state, the Court will apply Illinois law in interpreting the policies. *See Coleman v. Ramada Hotel Operating Co.*, 933 F.3d 470, 473 (7th Cir. 1991).

Coverage under a claims-made policy occurs when a claim is made and reported during the specified policy period. The courts have recognized the essence of a claims made policy is notice to the carrier within the policy period. *Cont'l Cas. Co. v. Cuda*, 715 N.E.2d 663, 669 (Ill. App. Ct. 1999); *Aetna Cas. & Sur. Co. v. Allsteel, Inc.*, 709 N.E.2d 680, 686 (Ill. App. Ct. 1999); *see also Gulf Insurance Company v. Dolan*, 433 So.2d 512, 514 (Fla. 1983). When the insured becomes aware of any situation that could result in liability, it is required to notify the insurer. If notice is not given, then the carrier is under no obligation to indemnify the insured. *Cuda*, 715 N.E.2d at 669; *Allsteel*, 709 N.E.2d at 686; *see also Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087 (7th Cir. 1999); *Univ. of Illinois v. Cont'l Cas. Co.*, 599 N.E.2d 1338 (Ill. App. Ct. 1992); *Kerr v. Illinois Cent. R.R. Co.*, 670 N.E.2d 759 (Ill. App. Ct. 1996); *City of Harrisburg v. Int'l Surplus Lines Ins. Co.*, 597 F.Supp. 954 (M.D. Pa. 1984).

Illinois courts, as well as courts in at least two other jurisdictions, have unequivocally stated coverage for the policy period will not extend beyond the policy's expiration date. In short, expiration dates are to be strictly construed. *Univ. of Illinois*, 599 N.E.2d at 1353; *City of Harrisburg*, 596 F.Supp. at 960; *Gulf Ins. Co.*, 433 So.2d at 515; *Civic Assoc. v. Sec. Ins. Co. of Hartford*, 749 F.Supp. 1076, 1081 (D. Kan. 1990). Courts have stated two reasons for this. First, the purpose of a notice provision in a claims-made policy is to "allow the insurer to make a prompt and thorough investigation to determine the question of the extent of liability." *Univ. of Illinois*, 599 N.E.2d at 1353. Second, and more importantly, strict adherence to

expiration dates preserves an insurance carrier's ability to set rates without "having to consider the possibilities of inflation beyond the policy period, upward-spiraling jury awards, or later changes in the definition and application of negligence." *City of Harrisburg*, 596 F.Supp. 954 at 960; *see also Allsteel*, 709 N.E.2d at 685; *Gulf Ins. Co.*, 433 So.2d 512 at 514; *Stine v. Cont'l Cas. Co.*, 349 N.W.2d 127,131 (Mich. 1984). In turn, the insured benefits because they ultimately pay smaller premiums and benefit from broader coverage because "conduct occurring before the policy term is covered." *City of Harrisburg*, 596 F.Supp. 954 at 960-61. Notice provisions are, therefore, considered valid conditions precedent and not just technical requirements. *Home Ins. Co. of Illinois v. Adco Oil Co.*, 154 F.3d 739, 742 (7th Cir. 1998)("The question as hand is whether Illinois enforces notice requirements in claims-made policies. As far as we can see, it does.") This is true regardless of whether or not the insured has been prejudiced by any reporting delay. *Cincinnati Ins. Co..*, 694 N.E.2d 593, 596 (Ill. App. Ct. 1998); *Kerr*, 670 N.E.2d at 764; *Univ. of Illinois*, 599 N.E.2d at 1353.

In the present case, Defendant's 1998-1999 and 1999-2000 Policies were both drawn on An Employment Practices Insurance Claims Made Basis EPL form. This form contained a provision explicitly stating the existence of a notice provision. The relevant section, Condition 2 to the EPL policies, provides as follows:

> A. You must see to it that we or our authorized representative…are notified within thirty (30) days of the complaint or demand received by your management or supervisory Employee (s), a filing of an administrative charge or complaint, or a written or oral demand of any

6

></p>
>
>> kind following employment related or third party action
>> which may result in a claim under this policy.
>
> B. If a Claim is made or suit brought against any insured
> you must:
>> (i) Immediately record the specifics of the Claim
>> and the date received and;
>> (ii) Notify us, or our authorized representative
>> shown in Item 10 of the declarations, within
>> thirty (30) days.

(Compl. at Ex. A.)

Defendant does not dispute it first notified Plaintiffs of the existence of a claim on October 15, 1999, i.e. more than two and half months after its former employees filed suit and six months after it received letters demanding payment of all compensation due. This tardy notification is a clear violation of Condition 2 of the EPL policies which state the insurer was to receive notification of any impending or actual claim within thirty days.

In response, Defendant argues under Illinois law a technical violation of the notice requirement is not enough to allow an insurer to escape liability. Rather, the insurer must show that it was prejudiced by any reporting delay. Defendant misunderstands and misconstrues the relevant law. A showing of prejudice is only required in instances involving an occurrence policy. *City of Chicago v. United States Fire Ins. Co.*, 260 N.E. 2d 276 (Ill. App. Ct. 1970); *Univ. of Illinois*, 599 N.E.2d at 1353. Defendant's policies are consistently and correctly identified in the pleadings and briefs as claims-made policies.

Plaintiffs in this case are not required to show the Court they have been harmed by Defendant's failure to report the claim within thirty days. Plaintiffs only have to show Defendant did not follow the condition precedent to indemnification, i.e. the notice requirement. Additionally, the Court finds it is irrelevant whether or not Defendant

received a liability claim under the 1998-1999 Policy or the 1999-2000 Policy. Regardless of whether Defendant should have reported either the claim or a change in circumstances while the 1998-1999 Policy was still in effect, or within thirty days of the June lawsuit filing, it violated the notice requirement and liability does not attach.

Defendant asserts there is a genuine issue of material fact because it argues there was no claim against it until the five partners filed their lawsuits. Defendant maintains all three letters sent to Defendant should be regarded as "negotiations regarding the payment of certain bonuses" and thus, judgment as a matter of law is unavailable.

Defendant's argument is unreasonable, unrealistic and unpersuasive in light of the well-established law on claims-made policy insurance coverage. Illinois courts have recognized the common definition of a claim is a demand for money. *Nat'l Union Fire Ins. Co. v. Cary Comty. Consol. Sch. Dist.*, No. 93 C 6526, 1995 U.S. Dist. LEXIS 1846, at *8 (N.D. Ill. February 14, 1995); *Evanston Ins. Co. v. Sec. Assurance Co.*, 715 F.Supp. 1405, 1412 (N.D. Ill. 1989). Accordingly, all three letters sent from the five partners to Defendant, along with the article in the *Chicago Daily Law Bulletin* publicizing the dispute, qualify as claims. The April 1, 1999 letter from the four non-equity partners states: "(W)e wish to make clear that our cashing of checks is not intended to be a waiver of our positions with regard to the nature of our terminations of employment nor the amounts which we believe we are owed… In light of this, we ask the firm to preserve all evidence relating to this dispute." (Compl. at Ex. D.) Additionally, both the April 29 and May 1, 1999 letters specifically demanded the accounting and/or release of any amount

still owed to the terminated partners. (Pl.'s Summ. J. SOF at 3; Ex. 2.) Even if the Court were to ignore the obvious demands for money set out in these letters, Defendant still has to contend with the *Chicago Daily Law Bulletin* article. The article quotes a spokesperson for the non-equity partners, and the remaining equity partner herself, as saying they believed they were owed money. The author of the article goes on to state the Defendant's managing partner was interviewed on the matter, but declined to comment specifically on the compensation issue.

In light of these three letters and the *Chicago Daily Law Bulletin* article, the Court cannot find the first time Defendant was made aware of any liability claim against it was when the lawsuits were filed in June 1999. The language in the letters and the article clearly set forth a claim, and indeed a demand, for money. No reasonable jury could possibly interpret otherwise. Additionally, the courts have recognized that letters demanding payment are enough to put an insured on notice of an impending claim. *Nat'l Union Fire Ins. Co. v. Baker & McKenzie*, 997 F.2d 305, 307 (7th Cir. 1993); *Stiefel v. Illinois Ins. Co.*, 452 N.E.2d 73, 77 (Ill. App. Ct. 1983). As a matter of law, there was a claim against Defendant.

Even if this Court were to accept Defendant's assertion that neither the three letters it received nor the *Chicago Daily Law Bulletin* article were notices of "claims," and therefore, no reporting under the 1998-1999 Policy was required, there is no getting around the undisputed fact that the terminated partners filed their lawsuits against Plaintiffs in June, 1999. Under the notice provision of the 1999-2000 Policy, Defendant was required to notify Plaintiffs of these claims within thirty days.

9

Instead, for reasons Defendant fails to explain, it waited until October 15, 1999 to tell Plaintiffs about the liability claims. October 15 is more than two and a half months after the lawsuits were originally filed. Defendant simply did not follow the terms of either policy. Therefore, Plaintiffs do not have to indemnify Defendants against any loss. Defendant was in prime position to protect itself by simply reporting that a claim had been made. *Baker & McKenzie,* 997 F.2d ("It is far easier for the insured to lick a postage stamp.") Defendant failed to act, and the Court sees no reason why Plaintiff should have to pay for Defendant's inaction.

## Material Misrepresentation

The issue of material misrepresentation in the 1999-2000 Policy application form is also of great concern. At the time of policy renewal, Defendant did not tell Plaintiffs five terminated partners were demanding compensation from Defendant. The Illinois Insurance Code provides that an insurer may not void a policy simply because the insured makes a misrepresentation. Rather, the "misrepresentation must have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company." Illinois Insurance Code, § 215, Ill. Comp. Stat. 5/154 (2001); *see also Methodist Med. Ctr. v. Am. Med. Sec. Inc.,* 38 F.3d 316 (7th Cir. 1994); *Berry v. Am. Comty. Mut. Ins. Co.,* 855 F.Supp. 256 (C.D. Ill. 1994); *Roberts v. Nat'l Liberty Group of Co.,* 512 N.E.2d 792 (Ill. App. Ct. 1987). However, the insurer does not have to show both actual intent and materiality; it satisfies the burden with a showing of either. *Berry,* 855 F.Supp. at

257; *Roberts,* 512 N.E.2d at 794. Here, Plaintiff properly asserts materiality.

In determining whether a misrepresentation is material, the Court considers whether it "was one which might reasonably have influenced the insurer in deciding whether to accept or reject the risk, or whether different conditions would have been imposed" upon the insured prior to approval of coverage. *Great W. Steel Indus., Ltd. v. Northbrook Ins. Co.,* 484 N.E.2d 847 (Ill. App. Ct. 1985); *see also Cohen v. Washington National Insurance Company,* 529 N.E.2d 1065 (Ill. App. Ct. 1988); *Nat'l Boulevard Bank v. Georgetown Life Ins. Co.,* 474 N.E.2d 80 (Ill. App. Ct. 1984). Additionally, Illinois courts have stated the failure to disclose material information in response to a question in an insurance application is a material misrepresentation, Cohen, 529 N.E.2d at 1066, because the "misrepresentation prevents the insurer from adequately assessing the risks involved." *Garde v. Country Life Ins. Co.,* 498 N.E.2d 302, 307 (Ill. App. 1986); *see Apolskis v. Concord Life Ins. Co.,* 445 F.2d 31 (7th Cir. 1971); *Great W. Steel Indus. Ltd.,* 484 N.E. 2d at 853. Thus, a material misrepresentation is present where an insurer is prevented from assessing the risks of approving an application for coverage.

Here, Defendant answered "no" on its 1999-2000 EPL application form where it was asked specifically if there were any claims or changes in circumstances that Plaintiffs should know about. This is clearly a failure to disclose material information and is, therefore, a material misrepresentation. The Court also notes that Defendant violated its good faith duty requirement to disclose all relevant facts which may affect

11

its policy terms. The applicant cannot pick and choose what to tell his insurer, or take it upon itself to determine whether the information it holds regarding a change in circumstances or conditions that may lead to a future claim are material. *Garde,* 498 N.E.2d at 307. It is the insurer's responsibility to sift through an applicant's responses and make that determination on its own. *Apolskis,* 445 F.2d 31 at 35. A material misrepresentation will void coverage even if it is made by mistake. *Methodist Med. Ctr. of Illinois,* 38 F.3d at 319; *Cohen,* 529 N.E. 2d at 1066. An honest mistake will not excuse the insured for providing false or misleading information on its insurance application. Therefore, the Court does not have to determine whether or not Defendant's failure to disclose all relevant information was intentional or evaluate its reasons for doing so. It is enough that the failure occurred.

Where, as here, an application requests disclosure of any change in circumstances or any claims pending, the courts supply an objective standard to determine if the insured knew about the claim. *Ratcliffe v. Int'l Surplus Lines Ins. Co.,* 550 N.E.2d 1052, 1056 (Ill. App. Ct. 1990); *Evanston Ins. Co. v. Sec. Assurance Co.,* 715 F. Supp. 1405, 1415 (N.D. Ill. 1989). Defendant, through letters and the *Chicago Daily Law Bulletin* article, had enough information to know the terminated partners were making claims to money they believed Defendant owed them. Even as the Court construes these facts in the light most favorable to the non-moving party, as is required in a motion for summary judgment, it still must find the only plausible conclusion is the Defendant had adequate knowledge a liability lawsuit against them was a very real possibility.

The Court also notes Plaintiffs have provided a letter from an official at their underwriting company questioning Defendant's late notification. The letter further states there is a very real possibility that either the 1999-2000 Policy would not have been renewed or, at the very least, the premiums would have risen had the underwriter been able to properly assess its risk at the time of application.

Courts have frequently used testimony and affidavits from underwriters in determining the issue of materiality. *See generally Methodist Med. Ctr.*, 38 F.3d at 319; *Garde*, 498 N.E.2d at 307. While Plaintiff has presented a letter rather than testimony or affidavits, the Court feels it is sufficient to show the misrepresentation effectively estopped the underwriter from conducting a full assessment of Defendant's insurance application. As stated above, when a misrepresentation interferes with an insurers ability to properly assess risk, the Illinois courts will find it material. This finding of materiality effectively allows an insurer, here Plaintiff, to avoid indemnification.

The Court emphasizes it is not attempting to create a new category of evidence for determining the issue of material misrepresentation. Rather, when taken in conjunction with other correspondence, the Court finds there is enough information to state unequivocally Defendant's misrepresentation was indeed material because it affected Plaintiff's risk assessment.

For the reasons stated above, there is no doubt that the misrepresentation in this case, i.e. failing to notify Plaintiffs of claims against them, is material. Defendant has not offered arguments

sufficient to avoid a finding that its misrepresentation affected Plaintiffs' risk assessment. As such, summary judgment is appropriate.

## CONCLUSION

Plaintiff's Motion for Summary Judgment is GRANTED. Plaintiffs are not obligated to defend or indemnify Defendants under the 1998 - 1999 or 1999 - 2000 policies in the Illinois state court cases No. 99 CH 8497 and No. 99 CH 93727.

**IT IS SO ORDERED.**

DATED: October 11, 2001

*/s/ Wm. J. Hibbler*

WILLIAM J. HIBBLER, DISTRICT JUDGE